UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elaine Pierce,

        Plaintiff,

v.

Teachers Federal Credit Union Foundation
d/b/a Teachers Federal Credit Union,

        Defendant.

Civil No. 09-780 (JNE/FLN)
ORDER

Howard L. Bolter, Esq., Borkon, Ramstead, Mariani, Fishman & Carp, Ltd., appeared for Plaintiff Elaine Pierce.

Laura L. Myslis, Esq., Gislason & Hunter LLP, appeared for Defendant Teachers Federal Credit Union Foundation d/b/a Teachers Federal Credit Union.

Elaine Pierce brought this action in state court on March 12, 2009, alleging that her former employer, Teachers Federal Credit Union Foundation (Teachers Federal), violated the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2615-54 (2006). Teachers Federal timely removed the action to this Court. Now before the Court is Teachers Federal's Motion for Summary Judgment. For the reasons discussed below, the Court denies the motion.

I.     BACKGROUND

Pierce began working for Teachers Federal in 1991 as an accounting manager. She held that position until 2003, when she became a compliance officer. At that time, Pierce also began working a 7:30 a.m. to 3:30 p.m. schedule and worked from home one day a week "doing research and reading." Pierce remained a compliance officer and worked the same schedule at all times relevant to this case.

Pierce was diagnosed with breast cancer in 2006. She had one mastectomy in May 2006 and another in January 2007. The cancer was also treated with chemotherapy. Pierce was

1

granted FMLA leave as a result of her cancer treatment and worked from home more than one day a week. The cancer went into remission at the end of 2007 and Pierce's oncologist authorized her return to work without restrictions in February 2008. Pierce continued to take drugs to keep the cancer in remission and was required to meet with her oncologist every six months for an exam, new prescriptions, and a blood test.

Matthew Wohlers began as the new chief executive officer of Teachers Federal on May 5, 2008. Pierce introduced herself to Wohlers on May 20, 2008. During that conversation, Wohlers told Pierce that "he was working on a plan for the board that would take four to six weeks to get approved or not approved" and that the compliance officer position might be eliminated. Wohlers also asked Pierce to consider working 8 a.m. to 5 p.m. Monday through Friday. A week later, Wohlers held a meeting with all of Teachers Federal's employees to inform them that "there were going to be a lot of changes." On June 4, 2008, Wohlers met with Pierce to review her job duties and again asked her to consider changing her schedule. Pierce refused to consider the issue until she knew whether her position was going to be eliminated. At that meeting, Pierce informed Wohlers of her cancer diagnosis and treatment.

On the morning of June 6, 2008, Pierce scheduled an appointment for later that afternoon with her general practitioner, Dr. Bula Roy, in order to have FMLA leave paperwork completed because she was "suffering with . . . anxiety and stress during the daytime, along with . . . symptoms [from the cancer medication, including] bone pain, muscle[] pain, [and] aches." Pierce saw Suzanne LeRoy, a nurse practitioner in Dr. Roy's office, who identified the following "[m]ultiple chronic conditions" on the FMLA leave request form: depression; anxiety; nephrolithiasis; "[b]reast cancer survivor x 2 yrs. with adverse effect [of] current medications"; and nonalcoholic steatohepatitis. LeRoy specified that it would be necessary for Pierce "to take

work only intermittently or to work on a less than full schedule" for approximately six months and that Pierce needed "flexible hours in order to take medications if symptomatic." LeRoy also noted that Pierce could perform all aspects of her job with flexible scheduling.

Pierce submitted the FMLA leave paperwork to Teachers Federal on June 9, 2008. Three days later, Patti Leon, a Teachers Federal human resources employee, brought Pierce's FMLA leave paperwork to Sherri Stumpf, the senior vice president of human resources, because Leon was unclear about certain aspects of the paperwork. Stumpf approved Pierce's request "for time off as related to [appointments and] therapy or sick days," but decided to meet with Pierce to "have an interactive dialog[ue] about what flexible schedule meant to her and how that would help her." That same day, Wohlers allegedly told Pierce that the compliance officer position was not going to be eliminated but that Pierce would begin reporting to an auditor instead of to Wohlers.[1] At that time, Wohlers did not know that Pierce had applied for FMLA leave benefits.

Stumpf met with Pierce for the "interactive dialogue" on June 16, 2008. During that meeting, Pierce told Stumpf that she thought her responsibilities were being taken away and as a result she had only thirty hours worth of work to complete each week. Pierce indicated that her

---

[1]  Teachers Federal argues that the Court should disregard Pierce's deposition testimony that Wohlers told her the compliance officer position would not be eliminated because later in her deposition she indicated that she "might have" told Stumpf on June 16 that it was "stressful being at my job, not knowing if it was being eliminated." Pierce, however, continued testifying that she "remember[ed] feeling like [her] job was being taken away from [her], parts of it; and that [she] didn't have enough to do and that made [her] stressful." Although there is some inconsistency in Pierce's testimony, it is possible that despite Wohlers's alleged assurance that her job was secure, Pierce could have felt that her position was gradually being eliminated because she was having responsibilities taken away from her. This does not present the typical situation in which a party submits an affidavit directly contradicting earlier deposition testimony. *Cf. Baker v. Silver Oak Senior Living Mgmt. Co.*, 581 F.3d 684, 690 (8th Cir. 2009) ("The authority to disregard an affidavit and grant summary judgment on the remaining record . . . is limited to situations where the conflicts between the deposition and affidavit raise only sham issues." (quotation marks omitted)). Accordingly, the Court accepts Pierce's testimony as true for purposes of summary judgment.

3

reduced workload was making her nervous and anxious and requested that Stumpf ask Wohlers whether he wanted Pierce to work a reduced schedule. Pierce indicated that she did not want to work part time because she would lose her benefits, but that if her schedule was reduced to thirty hours per week she could retain her benefits and fulfill her job duties. Stumpf informed Pierce that stress resulting from not having enough work was not covered by FMLA, but that she would speak with Wohlers about reducing Pierce to a thirty-hour-a-week schedule.

Pierce went to her office after meeting with Stumpf and began crying because she was "very upset about everything." Pierce then went to another room where she "started having a panic attack." Pierce left that room and ran into Stumpf, who informed her that she could meet with Wohlers at 4:30 p.m. to discuss the result of their conversation. Pierce told Stumpf that she needed to go home and that Wohlers would have to meet with her the following day.

At 8:00 a.m. on June 17, 2008, Wohlers's secretary told Pierce that she had a meeting scheduled with Wohlers at 8:30 a.m. Stumpf was present when Pierce arrived at Wohlers's office. Without prompting, Wohlers told Pierce that he had decided to eliminate the compliance officer position and that she would receive two months' severance pay in addition to certain other benefits.[2] Pierce asked Wohlers, who had become aware of Pierce's FMLA leave request "very, very close to" June 17, if the decision to eliminate the position was "because of [her] FMLA." According to Pierce, Wohlers responded that his decision was based on "[t]hat, and other things." Wohlers did not tell anyone before the meeting that he had made a final decision to terminate the compliance officer position.

---

[2] Pierce testified in her deposition that she thought Wohlers was merely acting at the direction of the board of directors when determining which positions to eliminate. Pierce, however, had no personal knowledge to support this belief. In contrast, Wohlers testified that the board "never specifically told [him] to do anything."

4

In addition to the elimination of Pierce's position, one other employee was terminated in August 2008 and five more were terminated in December 2008. The duties associated with the compliance officer position were distributed to the leaders of the various departments at Teachers Federal.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided [by FMLA]" and from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful [by FMLA]." 29 U.S.C. § 2615(a). Two types of claims exist under FMLA. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). A claim for interference is supported by allegations "that an employer denied or interfered with [an employee's] substantive rights

5

under the FMLA." *Id.* A claim for retaliation requires an employee to show "that the employer discriminated against [her] for exercising [her] FMLA rights."[3] *Id.*

   1.   *Interference*

To establish a claim for interference, "an employee must show only that he or she was entitled to the benefit denied." *Id.* (quotation marks omitted). An employer's intent is irrelevant. *Id.* at 1051. However, because an employer is not strictly liable every time it terminates an employee who qualifies for FMLA leave benefits, an employer can avoid liability by showing that the employee's termination was unrelated to those benefits. *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005). Teachers Federal argues that Pierce was not qualified for benefits under FMLA because she did not suffer from a serious health condition.[4] Alternatively, Teachers Federal contends that even if Pierce was qualified for FMLA leave benefits, the elimination of the compliance officer position was unrelated to those benefits. Pierce maintains that she was entitled to intermittent leave benefits for continuing treatment of

---

[3]   Pierce did not distinguish the two types of FMLA claims in her Complaint. Teachers Federal's memorandum in support of its motion for summary judgment addressed only a retaliation claim. Pierce, however, argued in her opposition memorandum that she asserted and is pursuing interference and retaliation claims. Teachers Federal did not expressly dispute Pierce's position in its reply memorandum, but instead argued that both types of claims fail based on the undisputed evidence. Accordingly, the Court addresses both types of FMLA claims.

[4]   Pierce asserts that Teachers Federal should be estopped from arguing that Pierce was not entitled to FMLA leave benefits because Stumpf approved Pierce's request for intermittent leave benefits. *See Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009) ("Equitable estoppel is available to prevent a company from contesting an employee's right to assert a claim under the FMLA."). Pierce, however, has not shown that she relied on the approval of those benefits to her detriment. *See id.* ("The principle of equitable estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." (quotation marks omitted)). Consequently, Teachers Federal is not estopped from arguing that Pierce was not entitled to intermittent leave benefits.

the conditions identified in her FMLA leave benefits paperwork,[5] and that her termination was related to those benefits.

### a. Qualification for FMLA leave benefits

FMLA provides an eligible employee with "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). FMLA leave "may be taken intermittently or on a reduced leave schedule when medically necessary." *Id.* § 2612(b)(1). "Intermittent leave means leave taken in separate periods of time due to a single illness or injury." 29 C.F.R. § 825.800 (2006).[6] This "may include leave of periods from an hour or more to several weeks," including "leave taken on an occasional basis for medical appointments." *Id.*

A "serious health condition" is, in relevant part, "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The regulations promulgated by the U.S. Department of Labor pursuant to statutory authority define a "serious health condition involving continuing treatment by a health care provider" in a variety of manners. *See* 29 C.F.R. § 825.114(a)(2); *see also* 29 U.S.C. § 2654 (authorizing Secretary of Labor to prescribe implementing regulations). One definition is:

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any

---

[5] Pierce's counsel acknowledged at the hearing on this motion that Pierce no longer contends she was eligible for a reduced leave schedule.

[6] The Court applies the regulations in effect at the time Pierce applied for FMLA leave benefits.

7

subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services . . . under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2). A "course of prescription medication" constitutes "a regimen of continuing treatment." *Id.* § 825.114(b).

The regulations also define a "serious health condition involving continuing treatment" as a "chronic serious health condition," which is a condition that:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

*Id.* § 825.114(a)(2)(iii).

"Treatment" under the applicable regulations "includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." *Id.* § 825.114(b). "An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." *Id.* § 825.115.

The only medical records submitted by either party are the clinic notes taken by LeRoy related to Pierce's June 6, 2008, appointment. Those notes identify a primary diagnosis of anxiety disorder and another diagnosis for "major depression recurrent." The notes also indicate

8

that Pierce was taking prescription medication to treat those conditions. With respect to the other conditions identified in Pierce's FMLA paperwork, the clinic notes provide in full: "Multiple chronic conditions including . . . 2 year survivor of breast cancer with current Arimidex therapy, nephrolithiasis exacerbation approximately every 6 months and non-alcoholic steatohepatitis." Despite the paucity of medical records, as discussed below, LeRoy's clinic notes and Pierce's deposition testimony establish genuine issues of material fact as to whether the conditions identified in Pierce's FMLA paperwork constitute serious health conditions requiring continuing treatment.

First, Pierce was diagnosed with breast cancer in 2006. As a result, she had two mastectomies, was treated with chemotherapy, and began a course of medication intended to keep the cancer in remission. Although the record contains no specific evidence regarding a period of incapacity resulting from Pierce's cancer and treatment, it is reasonable to infer from the severity of her illness that she experienced a period of incapacity of more than three consecutive calendar days. In addition, Pierce met with her oncologist twice a year for treatment and was placed on a continuing course of medication. Therefore, at the time of her application for FMLA leave benefits in June 2008, a reasonable jury could determine that Pierce qualified for intermittent leave benefits for care related to her continuing cancer treatment.[7]

Second, while the record contains no evidence supporting a reasonable inference that Pierce's anxiety and depression ever caused a period of incapacity of more than three calendar days, Pierce testified that she had to see a doctor every six months to obtain refills for her anti-anxiety and anti-depression medications and that she had been on anti-depressants for twenty

---

[7] Pierce testified in her deposition that she received FMLA leave benefits during her cancer treatment. The record contains no additional evidence regarding those benefits.

9

years.[8]  The record also shows that Pierce's mental health conditions may have resulted in episodic periods of incapacity, such as during panic attacks.  Accordingly, a reasonable fact finder could determine that Pierce's mental health conditions constituted "chronic serious health conditions" at the time of her June 2008 application for FMLA leave benefits and that she was entitled to intermittent leave benefits for continuing treatment of those conditions.  *See id.* § 825.114(c) ("Mental illness resulting from stress or allergies may be [a] serious health condition[].").

Third, although there is no evidence to show that Pierce's nephrolithiasis caused a period of incapacity of more than three days, Pierce testified that during the first half of 2008 she suffered from kidney stones every three or four months and that one reason she visited the doctor in May 2008 was to treat those kidney stones.  LeRoy's notes also indicate that Pierce experienced an "exacerbation" every six months.  It is reasonable to infer that kidney stones requiring medical intervention may cause episodic periods of incapacity.  *Cf.* Robert K. Ausman & Dean E. Snyder, 7 *Medical Library: Lawyers Edition* § 16:26 (1991) (describing kidney stones as "small, recurrent and caus[ing] great pain as they try to pass through the urinary system").  As a result, a reasonable fact finder could determine that Pierce's nephrolithiasis was a "chronic serious health condition" entitling her to intermittent leave benefits to treat the condition.

Finally, Pierce testified that she was diagnosed with nonalcoholic steatohepatitis in 2001 or 2002 and that the disease caused her to be "out of work for six months at that time."  This

---

[8] Teachers Federal challenges LeRoy's authority to diagnose and treat mental health conditions and argues that her diagnosis should not be considered.  Even if the Court disregarded LeRoy's diagnosis, however, Teachers Federal does not dispute that Pierce was taking medications for her mental health conditions and that she had to visit a doctor authorized to prescribe her additional medication every six months.  Thus, the evidence in the record supports a reasonable finding that Pierce suffered from anxiety and depression.

10

testimony indicates that Pierce experienced a period of incapacity of more than three consecutive days. Moreover, it is reasonable to infer that a disease resulting in a six-month absence from work also involved two or more treatments by a health care provider or a regimen of continuing treatment. Thus, a fact issue exists as to whether Pierce's nonalcoholic steatohepatitis was a serious health condition involving continuing treatment for which she was entitled to intermittent leave benefits.[9]

In sum, although there are substantial evidentiary gaps with respect to Pierce's medical conditions, sufficient evidence exists to permit a reasonable inference that she qualified for intermittent leave benefits at the time she applied for benefits in June 2008. Accordingly, Pierce can maintain a claim for interference so long as a fact finder could reasonably determine that her termination was related to her FMLA leave benefits.

        b.     *Termination related to FMLA leave benefits*

While Teachers Federal has adduced some evidence that Wohlers intended to eliminate the compliance officer position independent of Pierce's application for FMLA leave benefits, there are a number of disputed facts that prohibit summary judgment. First, at this stage of the proceedings, the Court must accept as true Pierce's testimony that Wohlers said Pierce's FMLA leave was one of the reasons for her termination. Second, Wohlers allegedly told Pierce on June 12 that her job was secure. Five days later, and after Wohlers learned of Pierce's application, he decided to eliminate the compliance officer position. Third, Wohlers told nobody else that he had made a final decision to eliminate the compliance officer position before he terminated Pierce on June 17. This undermines Wohlers's assertion that he had decided to eliminate the

---

[9]     Pierce testified in her deposition that she filed a FMLA leave request at the time of her six-month absence from work due to nonalcoholic steatohepatitis. The record contains no additional evidence regarding Pierce's earlier leave request.

compliance officer position almost immediately upon becoming Teachers Federal's chief executive officer. Based upon this evidence, a fact issue remains as to whether Pierce's termination was related to her application for FMLA leave benefits. Accordingly, the Court denies summary judgment on Pierce's interference claim.

### 2. *Retaliation*

An employer may not consider "'an employee's use of FMLA leave as a negative factor in an employment action.'" *Stallings*, 447 F.3d at 1051 (quoting *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)). "'Basing an adverse employment action on an employee's use of leave . . . is therefore actionable.'" *Id.* (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002)). Unlike an interference claim, a claim for retaliation requires an employee to establish that the employer acted with retaliatory intent. *Id.* An employee can prove retaliatory intent with direct evidence or by satisfying the burden-shifting framework articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Stallings*, 447 F.3d at 1051-52. If there is direct evidence of retaliatory animus, a court applies the mixed-motives test set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989). *See King v. Hardesty*, 517 F.3d 1049, 1057-58 (8th Cir. 2008) (applying *Price Waterhouse* to race discrimination claims under 42 U.S.C. §§ 1981, 1983); *see also Hunter v. Valley View Local Schs.*, 579 F.3d 688, 692 (6th Cir. 2009) ("In light of our reading of the FMLA through the lens provided by [*Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009)], we continue to find *Price Waterhouse*'s burden-shifting framework applicable to FMLA retaliation claims."). The mixed-motives test places the burden on "the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor." *King*, 517 F.3d at 1057 (quotation marks omitted).

In this case, both parties addressed Pierce's claims under the *McDonnell-Douglas* framework. Wohlers, however, allegedly told Pierce at the June 17 meeting that his decision to terminate her position was based in part on her FMLA leave benefits. This would be direct evidence of retaliation if Pierce's testimony is believed by the fact finder. *See id.* at 1057-58 (defining direct evidence as evidence "of conduct or statements by persons involved in the decision-making process, which indicate a [retaliatory] attitude was more likely than not a motivating factor in the employer's decision." (quotation marks omitted)). As a result, the issue of whether Teachers Federal would have eliminated the compliance officer position regardless of Pierce's FMLA leave benefits must be resolved at trial. *See id.* at 1058 ("'[E]vidence of additional motives, and the question [of] whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues.'" (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004))). Accordingly, summary judgment in favor of Teachers Federal on Pierce's FMLA retaliation claim is not warranted.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT Teachers Federal's Motion for Summary Judgment [Docket No. 10] is DENIED.

Dated: February 9, 2010

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge